STATE OF NORTH CAROLINA v. BOBBY RAY HIGHTOWER

No. 1A89

. (Filed 25 June 1992)

1. **Jury § 7.9 (NCI3d)— defendant's failure to testify—consideration by juror—denial of challenge for cause—prejudicial error**

The trial court erred in denying a challenge for cause of a prospective juror who indicated that he would try to be fair to the defendant but might have trouble doing so if the defendant did not testify. Moreover, the failure to allow this challenge for cause was prejudicial error where defendant exhausted his peremptory challenges in excusing this juror, and defendant renewed his challenge for cause to this juror and told the court that he would peremptorily challenge the juror then being questioned if he had not exhausted his peremptory challenges. N.C.G.S. §§ 15A-1212(8) and (9).

**Am Jur 2d, Jury §§ 213 et seq.**

2. **Evidence and Witnesses § 177 (NCI4th)— pregnancy of murder victim—evidence of motive and premeditation and deliberation**

Evidence of a murder victim's pregnancy and defendant's knowledge thereof was relevant and admissible to show that defendant's motive for the murder was to eliminate the victim and her pregnancy as a potential threat to his reconciled marriage and to show that the murder was premeditated and deliberate. Furthermore, the probative value of this evidence substantially outweighed any prejudice. N.C.G.S. § 8C-1, Rules 401 and 402.

    **Am Jur 2d, Homicide § 273.**

Justice MEYER dissenting.

Justice WHICHARD joins in this dissenting opinion.

Justice LAKE did not participate in the consideration or decision of this case.

APPEAL as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing the sentence of death entered by *Freeman, J.,* at the 14 November 1988 Criminal Session of

## STATE v. HIGHTOWER

[331 N.C. 636 (1992)]

Superior Court, GUILFORD County. Heard in the Supreme Court 10 September 1991.

The defendant was tried for his life for first degree murder. The State's evidence showed that the defendant stabbed Naomi Donnell to death and threw her body into a river. The jury found the defendant guilty and recommended the death penalty be imposed. The defendant was sentenced to death.

The defendant appealed to this Court.

*Lacy H. Thornburg, Attorney General, by Barry S. McNeill, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant appellant.*

WEBB, Justice.

The defendant has brought forward seventeen assignments of error. We shall discuss two of them.

[1] In his first assignment of error he contends it was error not to allow a challenge for cause to a juror. The defendant preserved his right to bring forward this assignment of error by following the procedure of N.C.G.S. § 15A-1214(h). He peremptorily challenged the juror. He then exhausted his peremptory challenges and renewed his challenge for cause to the juror, which was denied.

During the selection of the jury the following colloquy occurred:

MR. LIND:— Okay, well, I appreciate that. That brings me to the next question is, Bobby very well may not take the witness stand. We may not present any evidence. Now, do you feel like if he didn't take the witness stand, do you feel like that might affect your ability to give him a completely fair and impartial trial because you might feel like you want to hear both sides before you could decide the case?

JUROR BROWNING:— Yes, I would like to hear both sides, but—

MR. LIND:— Well, if he—that's why I'm asking this now. There's a good chance that he probably will not testify. So, knowing that, do you feel like you could—that that would affect your ability to give him a fair and impartial trial?

JUROR BROWNING:— Yes.

. . . .

THE COURT:— All right, Mr. Browning, as you may have heard me say earlier, under our law, the defendant is presumed to be innocent. He's not required to prove his innocence, and our law and the Constitution gives him the right not to testify if he so elects, and the law also says that that decision, if he should make that, not to testify, is not to be held against him, and that you, as a juror, are not to consider his silence in anyway in your deliberations. Now, I don't care whether you agree with that law or disagree with it, or whether you don't like it or do like it, or whether it doesn't make sense to you or whatever. That's not the issue. I don't want to debate that law. My question is, could you follow that law whether you like it or not?

JUROR BROWNING:— I'm just trying to think and give you a fair answer.

THE COURT:— I know that's a difficult question, and I'll tell you, when we get into the case, I'll tell you that your duty as a juror is to follow the law of North Carolina as I give it to you and not as you think it is and not as you might like it to be. So, what I'm saying is, it doesn't matter whether you like it or not like it. The bottom line is, can you follow the law as I explain it to you and not as you might like it to be or think it ought to be?

JUROR BROWNING:— Yeah, I could follow it, if it's the law.

THE COURT:— And if I tell you that the law says that you're not to use, or consider in anyway, the defendant's silence against him in your deliberations, you could do that, is that what you're saying?

JUROR BROWNING:— I still feel like it might stick in the back of my mind, even though I—you know, I'll try to discount it, but I—

THE COURT:— But you would make every effort to follow the law?

JUROR BROWNING:— Right.

THE COURT:— And you think you could follow the law?

JUROR BROWNING:— Yes.

THE COURT:— You just have some reservation about whether or not that would stick in the back of your mind?

JUROR BROWNING:— Right.

. . . .

THE COURT:— Well, let's go back to the silence of the defendant one more time. You understand that he has that right under the law?

JUROR BROWNING:— Right, uh huh.

THE COURT:— And you—let me just ask you, could you follow that law or could you not?

JUROR BROWNING:— Like I say, I could follow the law, but I'm not going to—you know, it could stick in the back of my mind. I could—

THE COURT:— Well, it's obviously going to be in your mind. I mean, you can't erace [sic] it, but could you ignore it and follow the law as I explain it to you and not let it—it's going to be there, obviously. If you know something, you can't erace [sic] it completely, but could you—even being aware of that, could you just not let it affect your decision in anyway?

JUROR BROWNING:— I can't tell you for sure, because if the, you know, first degree murder charge is pretty serious, and I don't want—I want to give an impartial decision, and I don't want anything to hinder it, and I'm afraid that might hinder it.

. . . .

MR. LIND:— The fact that your feelings about him not taking the witness stand and testifying could substantially impair your deciding the case. Despite your best efforts to try to follow that Judge's instructions, that would still be in your mind, and that would still be in your mind, and you would have some severe concerns that it might affect your ability to give him a fair trial, correct?

JUROR BROWNING:— Right.

MR. LIND:— Okay, I don't have any other questions.

THE COURT:— Go back and forth forever with this. Do you want to ask him some questions?

MR. KIMEL:— I just want to get his answer to the last question.

THE COURT:— What was your last answer?

JUROR BROWNING:— He asked me what I said, or, you know, whether it would stick, and I said yes, and he asked me if I could follow the law, and I said yes, so—

MR. KIMEL:— I don't have anything else. The issue is if he can follow the law.

MR. LIND:— I asked—my question was, I asked if his feeling in the back of his mind would substantially impair him, despite his best efforts to follow the law, and he said he couldn't follow the law.

JUROR BROWNING:— I would try to follow the law.

THE COURT:— You would make every effort whatsoever to follow the law, whether you agree with it or not, would you not?

JUROR BROWNING:— Yes, right.

THE COURT:— I'm going to DENY the challenge for cause.

N.C.G.S. § 15A-1212 provides in part:

A challenge for cause to an individual juror may be made by any party on the ground that the juror:

. . . .

(8) As a matter of conscience, regardless of the facts and circumstances, would be unable to render a verdict with respect to the charge in accordance with the law of North Carolina.

(9) For any other cause is unable to render a fair and impartial verdict.

We have held that N.C.G.S. § 15A-1212(8), which is a codification of the rule in *Witherspoon v. Illinois*, 391 U.S. 510, 20 L. Ed. 2d 776 (1968), applies to the qualification of jurors in all cases. *State v. Kennedy*, 320 N.C. 20, 26, 357 S.E.2d 359, 363 (1987).

STATE v. HIGHTOWER

[331 N.C. 636 (1992)]

The defendant's challenge for cause should have been allowed under both section (8) and (9) of N.C.G.S. § 15A-212. When the defendant's attorney first asked if the defendant's failure to testify would affect the juror's ability to give him a fair and impartial trial, the juror said "[y]es." When the court questioned the juror, he said on one occasion that he could follow the law as given to him by the court but he repeatedly said the defendant's failure to testify would "stick in the back of my mind" while he was deliberating. On one occasion he told the court, "I want to give an impartial decision, and I don't want anything to hinder it, and I'm afraid that might hinder it." In Mr. Lind's last question to the juror, he asked if the juror had serious concerns that the defendant's failure to testify "might affect your ability to give him a fair trial[.]" The juror said "[r]ight." We can only conclude from the questioning of this juror that he would try to be fair to the defendant but might have trouble doing so if the defendant did not testify. In this case the defendant did not testify.

We have said that the granting of a challenge for cause of a juror is within the discretion of the judge. *State v. Quick*, 329 N.C. 1, 17, 405 S.E.2d 179, 189 (1991); *State v. Watson*, 281 N.C. 221, 227, 188 S.E.2d 289, 293, *cert. denied*, 409 U.S. 1043, 34 L. Ed. 2d 493 (1972). Nevertheless, in a case such as this one, in which a juror's answers show that he could not follow the law as given to him by the judge in his instructions to the jury, it is error not to excuse such a juror. It was error for the court not to allow the challenge for cause to Juror Browning in this case.

The question we next face is whether the failure to allow this challenge for cause was prejudicial error. After the challenged juror was excused and the defendant had exhausted his peremptory challenges, he renewed his challenge for cause to Juror Browning and told the court he would peremptorily challenge the juror then being questioned if he had not exhausted his peremptory challenges. Although this juror might not have been subject to a challenge for cause, it was the prerogative of the defendant as to whether to exercise a peremptory challenge. He was deprived of this right and for this reason there must be a new trial.

[2] Defendant's second assignment of error is that the trial court erred in denying his pretrial motion to exclude testimony from various people, including his own statements, regarding Naomi

Donnell's pregnancy and his knowledge thereof. He contends that such evidence was irrelevant, had no probative value to any fact of consequence in the case, and its probative value was substantially outweighed by its prejudicial and inflammatory effect on the jury. We disagree.

N.C.G.S. § 8C-1, Rule 402 (1988) provides "[a]ll relevant evidence is admissible[ ]" except if it is excluded by some other exclusionary rule. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1988). The prosecution may offer evidence of motive as circumstantial evidence to prove its case where the commission of the act is in dispute when "[t]he existence of a motive is, however, a circumstance tending to make it more probable that the person in question did the act[.]" 1 Henry Brandis, Jr., *Brandis on North Carolina Evidence* § 83 (3d ed. 1988).

In the instant case, the evidence of Donnell's pregnancy is relevant because it tended to support the State's theory of the defendant's motive for the murder. It is also relevant to prove that the murder was premeditated and deliberate and not a frenzied stabbing. The fact that Donnell threatened to tell everyone that defendant was the father of her baby, that defendant knew this, and that defendant had reconciled with his wife, tended to prove that defendant's plan and motive for the murder were to eliminate Donnell and her pregnancy as a potential threat to his reconciled marriage.

Further, the probative value as to motive and premeditation and deliberation substantially outweighed any prejudice. "[R]elevant evidence will not be excluded simply because it may tend to prejudice the opponent or excite sympathy for the cause of the party who offers it as evidence." *State v. Eason*, 328 N.C. 409, 421, 402 S.E.2d 809, 814 (1991). The evidence of Donnell's pregnancy enhanced the State's case against the defendant. This evidence will be admissible at the new trial. This assignment of error is overruled.

We do not discuss the defendant's other assignments of error because the questions they raise may not arise at a new trial.

New trial.

STATE v. HIGHTOWER

[331 N.C. 636 (1992)]

Justice LAKE did not participate in the consideration or decision of this case.

Justice MEYER dissenting.

I do not agree with the majority that the trial court erred in denying defendant's challenge for cause of prospective juror Browning. Having reviewed the transcript of the proceedings, the record on appeal, the briefs of both parties, and the oral arguments, I find no error in the guilt phase of defendant's trial; however, I believe that defendant is entitled to a new sentencing proceeding for error committed during the penalty phase of defendant's trial, a matter not addressed by the majority.

Until today, it has been well established that "[t]he question of the competency of jurors is a matter within the trial judge's discretion" and that the trial judge's ruling on a challenge for cause may be reversed only upon a showing of abuse of discretion. *State v. Watson*, 281 N.C. 221, 227, 188 S.E.2d 289, 293, *cert. denied*, 409 U.S. 1043, 34 L. Ed. 2d 493 (1972); *see also State v. McKinnon*, 328 N.C. 668, 403 S.E.2d 474 (1991); *State v. Black*, 328 N.C. 191, 400 S.E.2d 398 (1991); *State v. Kennedy*, 320 N.C. 20, 357 S.E.2d 359 (1987); *State v. Noell*, 284 N.C. 670, 202 S.E.2d 750 (1974), *death penalty vacated*, 428 U.S. 902, 49 L. Ed. 2d 1205 (1976). Although not explicitly delineated in our prior opinions, the reason for giving such great deference to a trial judge's ruling on a challenge for cause is clearly grounded upon the fact that the trial judge, as opposed to an appellate court, is in a much better position to decide whether a prospective juror will be fair, impartial, and able to render a decision based upon the laws of our state.

A trial judge "is not required to remove from the panel every potential juror" whose initial voir dire testimony supports a challenge for cause pursuant to N.C.G.S. § 15A-1212. *State v. Cummings*, 326 N.C. 298, 308, 389 S.E.2d 66, 71 (1990). Once a challenge for cause has been made based upon the juror's voir dire, it is the trial judge's responsibility to determine whether, in his or her opinion, the juror would be able to exercise properly his duties as a juror and base his findings upon the evidence presented at trial. *Black*, 328 N.C. at 196, 400 S.E.2d at 401; *State v. Young*, 287 N.C. 377, 387, 214 S.E.2d 763, 771 (1975). As Judge (later Justice) Harry C. Martin stated in *State v. Wright*, 52 N.C. App. 166, 278 S.E.2d 579, *disc. rev. denied*, 303 N.C. 319 (1981), "[a] juror's

answers need not be completely unequivocal or unambiguous for the judge to make his determination." *Id.* at 172, 278 S.E.2d at 585. The trial judge has the opportunity to hear the potential juror's responses and to observe the demeanor of the juror during voir dire examination. From this, the trial judge must determine what weight and credibility should be given to the potential juror's voir dire responses and assess independently the potential juror's ability to perform his duties as a juror. If, in the trial judge's opinion, the prospective juror "credibly maintains" that he will be able to set aside any bias he may have and render a fair and impartial verdict based on the evidence presented at trial, "then it is not error for the court to deny defendant's motion to remove [the] juror for cause." *Cummings,* 326 N.C. at 308, 389 S.E.2d at 71.

On at least two prior occasions, we have had the opportunity to decide whether a challenge for cause must be granted when a prospective juror indicates that the defendant's failure to offer evidence at trial might influence his or her decision. In *Cummings,* the initial voir dire examination of juror Walters showed that "Walters was a close friend and supporter of state's witness, Sheriff Barrington, had knowledge of the case based upon newspaper and television coverage and could potentially be biased against defendant if he elected to offer no evidence at trial." *Cummings,* 326 N.C. at 308, 389 S.E.2d at 71. Despite the potential bias of Walters, we held that the trial judge did not abuse his discretion in denying the defendant's challenge for cause because the juror subsequently stated that he could set aside his preconceived opinions as to defendant's guilt or innocence and decide the case based upon the evidence presented at trial. *Id.* at 308, 389 S.E.2d at 72.

In *State v. McKinnon,* 328 N.C. 668, 403 S.E.2d 474 (1991), we were faced with determining the propriety of the trial judge's denial of a challenge for cause of prospective juror Hayes. At the outset, we noted that the transcript of Hayes' voir dire indicated some confusion on her part. At one point during the questioning, Hayes indicated that she would require defendant to present evidence in his defense. Following her response, however, Hayes asked that the question be repeated. After further questioning, Hayes ultimately indicated "that if the State did not meet its burden of proof she could find defendant not guilty even though he presented no witnesses in his behalf." *McKinnon,* 328 N.C. at 677, 403 S.E.2d at 479. The defendant argued that the trial court should have allowed his challenge for cause of juror Hayes because

of her conflicting and ambiguous responses. We rejected the defendant's argument, concluding, "[t]he responses of juror Hayes indicated that she would be able to hold the State to its burden of proof without requiring defendant to present evidence; therefore, the trial court did not abuse its discretion in refusing to excuse her for cause." *Id.* at 677-78, 403 S.E.2d at 479.

As in *McKinnon*, the voir dire of Browning, the prospective juror challenged in this case, indicates some confusion on his part. Upon initial questioning by both the court and the State, Browning unequivocally responded that he "could . . . be completely fair and impartial and render a fair decision in both stages [of defendant's trial]," that he "[c]ould . . . follow the [c]ourt's instructions on the legal concepts of burden of proof and reasonable doubt in [the] case," and that he understood that "the State has to prove the defendant's guilt, and [defendant is] presumed innocent." When questioned by defense counsel concerning the possibility that defendant might not testify or present any evidence at trial, Browning stated, "Yes, I would like to hear both sides, *but—*" (Emphasis added.) Before Browning was able to finish answering the question, defense counsel interrupted, following up with a question that first appeared to ask whether Browning could remain fair and impartial but switched mid-question to inquire whether defendant's failure to testify would affect Browning's ability to be fair and impartial:

> Well, if he—that's why I'm asking this now. There's a good chance that he probably will not testify. So, knowing that, *do you feel like you could—that that would affect your ability to give him a fair and impartial trial?*

(Emphasis added.) Following Browning's affirmative response and without questioning Browning further about this subject, defense counsel asked the court to excuse Browning because of "his feelings as far as if [defendant] didn't testify."

In fulfillment of his responsibility to determine whether Browning could be fair and impartial, the trial judge then attempted to clarify Browning's response by inquiring of Browning's ability to follow the law:

> THE COURT:— All right, Mr. Browning, as you may have heard me say earlier, *under our law, the defendant is presumed to be innocent. He's not required to prove his innocence, and our law and the Constitution give[ ] him the right not to testify*

*if he so elects, and the law also says that that decision, if he should make that, not to testify, is not to be held against him, and that you, as a juror, are not to consider his silence in anyway in your deliberations.* Now, I don't care whether you agree with that law or disagree with it, or whether you don't like it or do like it, or whether it doesn't make sense to you or whatever. That's not the issue. I don't want to debate that law. *My question is, could you follow that law whether you like it or not?*

JUROR BROWNING:— I'm just trying to think and give you a fair answer.

THE COURT:— I know that's a difficult question, and I'll tell you, when we get into the case, I'll tell you that your duty as a juror is to follow the law of North Carolina as I give it to you and not as you think it is and not as you might like it to be. So, what I'm saying is, it doesn't matter whether you like it or not like it. *The bottom line is, can you follow the law as I explain it to you and not as you might like it to be or think it ought to be?*

JUROR BROWNING:— *Yeah, I could follow it, if it's the law.*

THE COURT:— *And if I tell you that the law says that you're not to use, or consider in anyway, the defendant's silence against him in your deliberations, you could do that, is that what you're saying?*

JUROR BROWNING:— I still feel like it might stick in the back of my mind, even though I—you know, I'll try to discount it, but I—.

THE COURT:— *But you would make every effort to follow the law?*

JUROR BROWNING:— *Right.*

THE COURT:— *And you think you could follow the law?*

JUROR BROWNING:— *Yes.*

. . . .

THE COURT:— *Well, let's go back to the silence of the defendant one more time. You understand that he has that right under the law?*

**STATE v. HIGHTOWER**

[331 N.C. 636 (1992)]

JUROR BROWNING: Right, uh huh.

THE COURT:— And you—let me just ask you, *could you follow that law or could you not?*

JUROR BROWNING:— *Like I say, I could follow the law,* but I'm not going to—you know, it could stick in the back of my mind. I could—

(Emphasis added.) As evidenced by a portion of the voir dire omitted from the majority opinion, Browning, upon inquiry by the State, once again reiterated that he could follow the court's instructions regarding defendant's right to not testify. Later, Browning did give ambiguous and somewhat contradictory responses when questioned by defense counsel. However, it is clear from the voir dire transcript that Browning became confused by defense counsel's questions. Another portion of the voir dire transcript omitted from the majority opinion reveals that Browning asked defense counsel to repeat the following question asked of Browning:

And so, there is some real question in your mind that that fact [that defendant may not testify] might impair your ability— substantially impair your ability to give him a completely fair and impartial trial in this matter, isn't that true?

Defense counsel then rephrased the question, asking the following confusing and compound question:

The fact that your feelings about him not taking the witness stand and testifying could substantially impair your deciding the case. Despite your best efforts to try to follow the Judge's instructions, that would still be in your mind, and you would have some severe concerns that it might affect your ability to give him a fair trial, correct?

Although Browning responded affirmatively, it is clear that Browning did not understand defense counsel's question. When asked by the court what his response was to that question, Browning stated, "He asked me what I said, or, you know, whether it would stick, and I said yes, and *he asked me if I could follow the law, and I said yes,* so—." (Emphasis added.)

Contrary to the majority's conclusion, the denial of defendant's challenge for cause of prospective juror Browning was not error. After carefully examining and clarifying Browning's responses, the

STATE v. HIGHTOWER

[331 N.C. 636 (1992)]

trial judge determined that Browning could remain fair and impartial and render a verdict based on the evidence presented at defendant's trial. Having observed the demeanor of Browning and having heard the questions propounded to Browning, the trial judge was in a much better position than are we to determine the meaning of Browning's ambiguous responses and to assess Browning's ability to perform his duties as a juror. Like the prospective jurors challenged in *Cummings* and *McKinnon*, Browning repeatedly stated that he could follow the law as he was instructed by the court. From this, one can only conclude that the trial judge's decision to deny the challenge for cause was amply supported by reason and was therefore a proper exercise of the trial judge's discretion. It is only by discarding our well-established principle that challenges for cause are reviewable only for abuse of discretion that the majority is able to reach its conclusion that "[i]t was error for the court not to allow the challenge for cause to Juror Browning in this case."

In conclusion, I agree with the majority that the evidence of Donnell's pregnancy was relevant and admissible to show defendant's motive and intent to kill Donnell, and I therefore concur in that portion of the majority opinion. However, I conclude that the trial judge properly exercised his discretion in denying defendant's challenge for cause of prospective juror Browning, and I therefore dissent from the portion of the majority opinion that grants defendant a new trial on this basis. With respect to defendant's other assignments of error, I have conducted a thorough examination of the transcript of the proceedings, the record on appeal, the briefs of both parties, and the oral arguments. I find no error in defendant's trial warranting reversal of defendant's conviction. However, I conclude that defendant is entitled to a new sentencing hearing based on the trial court's erroneous instruction that the jury could not reject the sole aggravating circumstance submitted unless the jurors *unanimously* agreed that the evidence presented did not prove the existence of the aggravating circumstance.

Justice WHICHARD joins in this dissenting opinion.