STATE OF NORTH CAROLINA v. CALVIN CHRISTMAS CUNNINGHAM

No. 232A91

(Filed 4 June 1993)

**1. Jury § 191 (NCI4th)— denial of challenge for cause — preservation of assignment of error**

Defendant satisfied the mandates of N.C.G.S. § 15A-1214(h) in order to preserve an assignment of error from a denial of a challenge for cause by (1) exhausting his peremptory challenges, (2) renewing his challenge for cause of the juror, and (3) having that renewed challenge denied by the trial court.

**Am Jur 2d, Jury § 218.**

**2. Jury § 201 (NCI4th)— presumption of innocence — confusion or reluctance by prospective juror — erroneous denial of challenge for cause**

The trial court in a first-degree murder prosecution erred in the denial of defendant's challenge for cause to a juror whose *voir dire* colloquy demonstrated confusion about, or a fundamental misunderstanding of, the principles of the presumption of innocence or a simple reluctance to apply those principles should the defense fail to present evidence of defendant's innocence. Although the juror ultimately stated, after a great deal of explanation from the trial court, that she understood that defendant was not required to prove his innocence, her subsequent comment that "if [defendant] doesn't want to prove his innocence, I would have to accept that" was at best ambiguous and was insufficient to abrogate her earlier assertions that she would expect defendant to prove his innocence. N.C.G.S. § 15A-1212(8) and (9).

**Am Jur 2d, Jury §§ 294, 301.**

STATE v. CUNNINGHAM

[333 N.C. 744 (1993)]

Appeal of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing the sentence of death entered by Fulton, J., at the 3 May 1991 Criminal Session of the Superior Court, Mecklenburg County. Heard in the Supreme Court on 17 February 1993.

*Michael F. Easley, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, Linda M. Fox, Assistant Attorney General, and Robert T. Hargett, Assistant Attorney General, for the State.*

*Thomas F. Loflin III for defendant-appellant.*

EXUM, Chief Justice.

Defendant Calvin Christmas Cunningham was capitally tried for the first-degree murder of Charlotte Police Officer Terry Lyles. The evidence tended to show that on 5 August 1990 defendant, while seated in the rear of Officer Lyles' police cruiser, shot Officer Lyles in the head. Prior to the shooting, defendant had been in custody following his arrest for communicating threats to police officers during a domestic disturbance. The jury found defendant guilty as charged and recommended that the death penalty be imposed. Judgment was then entered, and defendant was sentenced to death.

Defendant Cunningham has preserved one hundred twenty-two assignments of error, and briefed fifty-seven of those issues. Because we find error which prejudiced defendant during the jury selection phase of his trial, we need only discuss defendant's twenty-fourth assignment. In this assignment, defendant contends that the trial court improperly denied his motion to remove for cause two jurors, Carnes and Schormak, thereby violating his right to a fair and impartial jury, as guaranteed by North Carolina law and the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Because we find prejudicial error requiring a new trial with regard to the denial of defendant's challenge of juror Carnes for cause, we decline to address the *voir dire* of juror Schormak.

Defendant contends that, during *voir dire*, juror Carnes stated that she believed defendant would need to prove his innocence to avoid conviction on the charge of first-degree murder. By harboring such a misunderstanding of defendant's presumption of innocence,

defendant alleges that juror Carnes was "unable to render a fair and impartial verdict," as required by N.C.G.S. § 15A-1212. Therefore, defendant must be given a new trial.

N.C.G.S. § 15A-1212, entitled "Grounds for challenge for cause," provides in pertinent part:

> A challenge for cause to an individual juror may be made by any party on the ground that the juror:
>
> . . . .
>
> (8) As a matter of conscience, regardless of the facts and circumstances, would be unable to render a verdict with respect to the charge in accordance with the law of North Carolina.
>
> (9) For any other cause is unable to render a fair and impartial verdict.

N.C.G.S. § 15A-1212(8) codifies the rule of the United States Supreme Court in *Witherspoon v. Illinois*, 391 U.S. 510, 20 L. Ed. 2d 776 (1968). *See State v. Kennedy*, 320 N.C. 20, 26, 357 S.E.2d 359, 363 (1987).

**[1]** In order to preserve an assignment of error from a denial of a challenge for cause, defendant must follow the procedures set out in N.C.G.S. § 15A-1214(h). Having thoroughly reviewed the transcript of the jury selection phase, we find that defendant has satisfied the mandates of § 15A-1214(h) by (1) exhausting his peremptory challenges, (2) renewing his challenge for cause as to juror Carnes, and (3) having that renewed challenge denied by the trial court. Should we find any error in the denial of defendant's challenge to Ms. Carnes for cause, defendant's conviction must be reversed and the case remanded for a new trial. *State v. Leonard*, 296 N.C. 58, 248 S.E.2d 853 (1978).

**[2]** Defendant's contention that Ms. Carnes was "unable to render a verdict in accordance with North Carolina law," N.C.G.S. § 15A-1212(8) (1988), or that she was "unable to render a fair and impartial verdict," N.C.G.S. § 15A-1212(9) (1988), requires that we review the entire, albeit lengthy, transcript of her *voir dire* testimony regarding defendant's right to be presumed innocent until proven guilty *by the State*. During the course of juror Carnes' *voir dire* testimony, the following conversation took place between Ms. Carnes and Mr. Murphy, counsel for defendant:

Q. Do you understand, Ms. Carnes, that we have at law what is called the presumption of innocence, that is, a person who is charged with a criminal offense is presumed to be innocent until and unless the State can prove that person's guilt beyond a reasonable doubt?

A. Yes, sir.

Q. You understand that, don't you?

A. Yes, sir, I do.

Q. And, of course, you understand that the charge in this particular case is first-degree murder. It involves the shooting of a police officer. Do you understand that?

A. Yes, I do.

Q. And one of the things that you will be called upon to do is to apply the principles that we were talking about to this particular case if you sit as a juror.

A. Yes, I do.

Q. Now, it is one thing, of course, to say that you can do something and it may be entirely different.

A. Yes.

Q. That is, that you actually be able to do that, and that is really what I want you to search yourself about. I want you to think about that. You seem to be one who holds your opinion strong, and that's fine. Given that you have such a strong feeling about the death penalty in your statement that if a person takes another life, they should be put to death, given that Mr. Cunningham is charged with first-degree murder, as you sit there today, can you honestly say to yourself, not to me necessarily but to yourself, that you are able to presume Mr. Cunningham innocent?

A. Until he is proven guilty.

Q. Do you expect that to happen?

MR. WOLFE [the prosecutor]: Object.

THE COURT: Sustained.

A. I don't know.

STATE v. CUNNINGHAM

[333 N.C. 744 (1993)]

THE COURT: Don't answer the question when I sustain it.

Q. I understand that if he is proven guilty of first-degree murder, then that would remove the presumption of innocence, but that is really not what I am asking you. Okay? What I am really asking you at this point is can you honestly, as he sits there right now, and as you sit in that seat right now, and nobody knows this any better than you, I'm just asking, can you honestly presume him to be innocent?

A. Yes, because I don't know what happened.

Q. Now, part and parcel of the principle of the presumption of innocence is the defendant's right not to testify, not to present any evidence if he doesn't want to, because he doesn't have that burden. The State has the entire burden of proof in a criminal case to satisfy you beyond a reasonable doubt of a person's guilt, if they can do that. Okay? Now, would it present a problem for you in returning a verdict of not guilty if the State fails to prove to you beyond a reasonable doubt the defendant's guilt and Mr. Cunningham didn't testify?

A. I'm not sure I follow that.

Q. Okay. If Mr. Cunningham doesn't testify in this case, in your mind does that make the State's job any more difficult or easier?

A. I would think it would be more difficult.

Q. If he does not testify?

A. Yes, because they have to prove him innocent or guilty. I would think that he would have to testify, or need to.

Q. Okay. You understand that the State only has to prove guilt. They don't have to prove innocence.

A. Yes.

Q. And is it your expectation or is it your thinking now that we would have to prove that Mr. Cunningham is innocent?

A. Do I think you would have to prove it?

Q. Yes.

A. Yes, I thought that is what you would be trying to do.

STATE v. CUNNINGHAM

[333 N.C. 744 (1993)]

Q. Trying to prove that he's innocent?

A. Yes.

Q. Do you understand that the burden of proof is on the State?

A. Yes.

Q. Not us?

A. Yes.

Q. You would still expect him, or us, to prove Mr. Cunningham is innocent. Correct?

A. Yes.

MR. WOLFE: I would ask for a clarification on the law on that, your Honor.

THE COURT: Ms. Carnes—

A. He's getting me very confused.

THE COURT: Okay. Let me explain to you. I think I told you that Mr. Cunningham has entered a plea of not guilty.

A. Yes.

THE COURT: And under the law of North Carolina, the fact that he has been charged with a crime is not evidence of his guilt. He is not required to prove his innocence; he is presumed to be innocent.

A. Okay.

THE COURT: The State of North Carolina has the burden of proof, and that burden is to prove each element of the offense of which he is charged beyond a reasonable doubt. Now, the law also says that Mr. Cunningham does not have to testify in his own behalf. He doesn't have to call any witnesses or present any other form of evidence, and that you cannot hold that against him. Do you understand that?

A. Yes, ma'am.

THE COURT: Can you follow that law?

A. Yes, ma'am.

THE COURT: Mr. Murphy?

STATE v. CUNNINGHAM

[333 N.C. 744 (1993)]

Q. All right. Now, that's what I'm asking you, Ms. Carnes. The judge told you what the law is, and I think the district attorney also said the same thing to you. I thought I had explained that. I thought I said that. Now, the question is your ability to follow that law.

A. Yes.

Q. And that's what I'm asking you. That given your understanding at this point—and I trust that that is clear—is it your feeling that Mr.—we at this table would have to prove to you that Mr. Cunningham is innocent of this offense?

A. Yes.

MR. MURPHY: We offer her for cause.

MR. WOLFE: Object, Your Honor.

THE COURT: Did you understand the explanation?

A. Yes, ma'am.

THE COURT: And in light of my explanation that he is presumed to be innocent and is not required to prove his innocence, you would still require him to testify or to prove his innocence?

A. Right now he is innocent, or he is innocent until proven guilty. I understand that. But you are saying I need to—I'm sorry, I'm not sure.

THE COURT: You need to slow down just a little bit.

A. He is innocent until proven guilty. I understand that, until he is proven guilty, before we can say he is guilty. That, I understand.

THE COURT: Which part is it that you don't understand?

A. Well, I thought I understood everything.

THE COURT: Well, I told you that he is not required to prove his innocence.

A. Then I guess that means his attorney will have to prove that he is not guilty? He doesn't have to prove his innocence then—is that what you're saying—since he's innocent until proven guilty?

THE COURT: Let me start over. I told you that the fact that he has been charged with an offense is not evidence of his guilt. You can't consider it as evidence of his guilt. I told you also that he is presumed to be innocent and is not required to prove his innocence. The State of North Carolina, represented by Mr. Wolfe and Ms. Brown, has the burden of proof. That burden is to prove each element of the offense with which Mr. Cunningham is charged beyond a reasonable doubt. The State has to carry that burden of proof and convince all twelve jurors beyond a reasonable doubt of each element of the offense before the jury may return a verdict of guilty. Mr. Cunningham is presumed to be innocent, and that presumption stays with him throughout the course of the trial unless the jury finds after they go into the jury room to deliberate that the State has carried its burden of proof. The law also says that Mr. Cunningham does not have to testify. He does not have to call any witnesses on his behalf or present any evidence. He is not required to prove his innocence. And that you, as a juror, cannot hold that against him. Do you understand that?

A. Yes.

THE COURT: Were you confused?

A. Yes.

THE COURT: I'm going to deny the challenge for cause at this point.

Q. Okay. Ms. Carnes, it is not my purpose to try to confuse you. That's why I want you to stop me when we go along. If you don't understand anything that I have said, or if you need further clarification, stop me and we will ask the judge to do that because we don't want a confused juror. We want a juror who is clear with what they have to do. Okay?

A. Okay.

Q. Now, I do, however, want to pursue that with you just a little bit because I want to know how you feel about the matter and not just telling me things because you think that's what I want to hear. Okay? Because it's not what I want to hear; it's how you honestly feel about things. And what I want you to tell me is that if you would require the defendant to prove his innocence to you.

A. No.

Q. You would be satisfied then just to hear from the State and rely, if necessary, just on what the State presents to you on the guilt or innocence phase before you would return a verdict. Is that correct?

MR. WOLFE: Object.

MR. MURPHY: Well, the State has the burden.

MR. WOLFE: That is an improper statement of the law.

THE COURT: Sustained as to form.

Q. I will rephrase the question. Can you require the State to prove to you, if they can, Mr. Cunningham's guilt beyond a reasonable doubt?

A. Well, if I understand what they are saying, they have to prove he is guilty and not require his innocence to be proven. He doesn't have to prove his innocence, I guess, is what I'm trying to say.

Q. And would you accept that? I mean—

A. Yes, if he doesn't want to prove his innocence, I would have to accept that.

Q. Okay.

MR. WOLFE: May we approach the bench just a minute, Your Honor?

THE CORUT [sic]: Yes.

(Conference at the Bench)

Q. I guess I'm a little bit confused myself at this point, Ms. Carnes. Let's see if we can understand each other. Okay? You had indicated something to the effect that if we didn't want to prove his innocence, that you would accept what the State offered?

A. I understand that he is innocent right now until proven guilty. So if they prove him guilty, I would accept the fact that he is guilty, if they prove him to be guilty.

Q. Okay. I guess I didn't understand what you meant when you said if we didn't want to prove his innocence.

A. And then I said until they prove him guilty. When they prove him guilty, then he is guilty, when they prove he is guilty.

Q. Okay. When you say when they prove him guilty, what do you mean?

A. When they prove that he did it, when they come up with all of the evidence that he did it.

Q. I suppose I'm having some problems with that. It sounds like you expect them to do that.

MR. WOLFE: Object. .

A. No, I don't. I said—

THE COURT: Sustained.

A. Well, I should have said if they do.

THE COURT: Ms. Carnes, let me say when there is an objection, you need to stop talking.

It is important to note here that the repeated explanations outlined above of our law on the presumption of innocence followed two, separate explanations of the same subject by the trial judge and the prosecutor during their *voir dire* of juror Carnes.

The transcript reveals that after the above testimony, counsel for defendant pursued a different, and unrelated, line of questioning. Neither the trial court nor counsel for defendant returned to the subject of whether Ms. Carnes would require that defendant prove his innocence or whether Ms. Carnes still believed that defendant's failure to testify would potentially compromise his presumption of innocence. Following questioning by Mr. Murphy, defendant exercised one of his fourteen peremptory challenges, and Ms. Carnes was excused. As previously noted, defendant exhausted his peremptory challenges, and renewed his challenge for cause to Ms. Carnes. Counsel for defendant informed the trial court that, if his challenge for cause was allowed and defendant received an additional peremptory challenge, he would excuse juror Schormak who did in fact serve on the jury which convicted defendant.

We have oft stated that the granting of a challenge for cause rests in the sound discretion of the trial court. *State v. Hightower*, 331 N.C. 636, 641, 417 S.E.2d 237, 240 (1992); *State v. Quick*, 329 N.C. 1, 17, 405 S.E.2d 179, 189 (1991); *State v. Watson*, 281 N.C.

221, 227, 188 S.E.2d 289, 293, *cert. denied*, 409 U.S. 1043, 34 L. Ed. 2d 493 (1972). As a rule, we will therefore not disturb the trial court's ruling on a challenge for cause absent a showing of an abuse of that discretion. "Nevertheless, in a case . . . in which a juror's answers show that he could not follow the law as given . . . by the judge in his instructions to the jury, it is error not to excuse such a juror." *State v. Hightower*, 331 N.C. 636, 641, 417 S.E.2d 237, 240.

We find that the opinion of this Court in *Hightower* controls the outcome of the case *sub judice*. In *Hightower*, we found error in the denial of a challenge for cause to a juror who said on *voir dire* that defendant's failure to testify during his trial for first-degree murder would "stick in the back of my mind." *Id.* Although the *Hightower* juror ultimately acknowledged that he would "try to follow the law" despite this feeling, we concluded that the trial court erred in failing to grant the defendant's challenge for cause. Writing for the *Hightower* majority, Justice Webb stated: "We can only conclude from the questioning of this juror that he would try to be fair to the defendant but might have trouble doing so if the defendant did not testify." *Id.* Because the defendant's challenge for cause should have been allowed under both sections (8) and (9) of N.C.G.S. § 15A-1212, the Court reversed the defendant's conviction and remanded for a new trial.

In the case *sub judice*, juror Carnes' *voir dire* colloquy demonstrates either confusion about, or a fundamental misunderstanding of, the principles of the presumption of innocence or a simple reluctance to apply those principles should the defense fail to present evidence of defendant's innocence. Whether Ms. Carnes' reluctance to give defendant the benefit of the presumption of innocence was caused by confusion regarding the law, a misunderstanding of the law or a reluctance to apply the law as instructed, its effect on her ability to give defendant a fair trial remained the same.

After a great deal of explanation from the trial court, juror Carnes ultimately stated that she understood that defendant was not required to prove his innocence. We cannot, however, overlook her subsequent comment that "if [defendant] doesn't want to prove his innocence, I would have to accept that." While in some circumstances this would be a satisfactory response, we believe that, in the context of the entire *voir dire* on this topic, the comment

is at best ambiguous. Furthermore, and again taken in context, the statement is not sufficient to abrogate Ms. Carnes' earlier assertions that she would expect defendant to prove his innocence. It was, therefore, error for the trial court to deny defendant's challenge for cause.

We are cognizant of certain factual similarities between this case and *State v. McKinnon*, 328 N.C. 668, 403 S.E.2d 474 (1991). In *McKinnon*, we found no error in the trial court's denial of the defendant's challenge for cause to a juror who expressed some confusion as to the defendant's presumption of innocence, and gave ambiguous answers to questions about whether she would hold the State to its burden of proof. *Id.* at 677, 403 S.E.2d at 479. Her *voir dire* testimony included a comment that she would require defendant to present evidence in his defense. *Id.*

*McKinnon*, however, is distinguishable from the present case because the juror there "ultimately agreed *three times* that if the State did not meet its burden of proof she could find defendant not guilty even though he presented no witnesses in his behalf." *Id.* (emphasis added). In *McKinnon*, the following final exchange between the juror and defense counsel was dispositive:

[Q.] You wouldn't have that in the back of your mind the fact that he didn't testify or call any witnesses?

[A.] No, sir.

[Q.] That wouldn't be of any concern? If it would, just tell us.

[A.] No, sir, not if the State couldn't prove it.

[Q.] Okay. And that's irregardless [sic] of whether he testifies or puts on any evidence?

[A.] Yes, sir.

*Id.* at 677, 403 S.E.2d at 479. It is clear from this unequivocal exchange that any doubt or confusion in the juror's mind as to the State's burden and the defendant's presumption of innocence was dissipated to the extent that she could give the defendant there a fair trial and render an impartial verdict.

That is not the case here. We cannot point to any exchange between juror Carnes and either the trial court or defense counsel which satisfies us that Ms. Carnes' confusion about or misunderstanding of or reluctance to apply the law, whichever it was, on

such a fundamental concept as defendant's presumption of innocence was resolved as required by N.C.G.S. § 15A-1212.

We therefore find error requiring a

NEW TRIAL.